IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 13-cr-30051-MJR |
| | ) | |
| RAMONE RENO PARKER, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

I. **Introduction**

In May 2013, Ramone Reno Parker pleaded guilty to a charge of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On August 30, 2013, the undersigned sentenced Parker to a 30-month term of imprisonment followed by three years of supervised release (Doc. 31). Parker began his term of supervised release on August 18, 2015 (Doc. 39). On June 10, 2016, the United States ("the Government") filed a petition to revoke Parker's supervised release, alleging that he had violated multiple terms of his supervision. The most serious violation alleges that Parker committed the crime of first-degree murder of Lamondo Brown while he was on supervised release. On March 28, 2017, he initially appeared before United States Magistrate Judge Clifford J. Proud, and a final revocation hearing was set for April 14, 2017.

The revocation hearing was continued twice—once on the Government's motion and once on defense counsel's motion. Three weeks before the July 20, 2017, revocation hearing, defense counsel filed an objection to hearsay evidence and motion in limine along with a supporting brief and exhibits (Docs. 54, 55). The Government timely responded on July 12, 2017 (Doc. 57). The Court heard oral arguments at the July 20, 2017, hearing and took the matter under advisement. After the hearing, the Government, with Parker's consent, submitted several exhibits to the Court, including a group of video exhibits, a set of photographs, and excerpts from police reports.

Parker objects to the admission of the videotaped interrogation of Jarrett Richardson, the only eyewitness to the murder of Lamondo Brown, arguing that Richardson's statements to investigators are hearsay and that admitting them would violate Parker's Sixth Amendment right to confront adverse witnesses, violate his Fifth Amendment right to due process, and run afoul of Federal Rule of Criminal Procedure 32.1 For the reasons delineated below, the Court will admit the statements over Defendant's objection at the revocation hearing, which is now scheduled for September 14, 2017.

II. **Factual and Procedural Background**

On June 10, 2016, the Government filed a petition for revocation of Ramone Parker's supervised release, alleging violations of several conditions of release. Parker takes issue with the allegation that he violated a condition requiring that he "not

commit another federal, state or local crime" by murdering Lamondo Brown on May 28, 2016 (Doc. 39, p. 1).

Lamondo Brown was murdered in Cahokia, Illinois. The Major Case Squad of Greater St. Louis identified a car that passed him shortly before his death as one belonging to the girlfriend of Jarrett Richardson. On May 30, 2016, Major Case Squad investigators and parole agents from the Illinois Department of Corrections arrested and questioned Richardson about his role in the murder. In a series of interviews, Jarrett initially denied having any knowledge of Brown's murder before eventually confessing that he was driving the car that passed Brown moments before Brown was shot. According to Jarrett, however, it was Parker who got out of the car, while it was still moving, and shot at Brown.

During his first interview on May 30, 2016, Richardson slouched in his chair and appeared uninterested in speaking with the investigators. When asked about details related to the investigation, he claimed that he did not know what the investigators were talking about. The investigators took a break before returning for a second interview. Richardson continued to insist that he had no information about Brown's murder, even after investigators showed him evidence that contradicted his story. After being presented confronted with the conflicting information, Richardson's conversation with the investigators became heated. Richardson asked for an attorney, and the interview ended. Later that evening, Richardson withdrew his request for an

attorney and slowly became more cooperative with the officers. That night, he asked to speak to his mother and girlfriend, saying that he would be ready to talk with investigators if they would allow him to make phone calls.

The Court did not receive a copy of Richardson's call with his girlfriend from the parties, but the Court did receive a copy of Richardson's call with his mother, Kelly Richardson. Richardson called his mother for advice. He was distressed during the call and told her was worried he would be charged with a murder he didn't commit. He told her that he was with Parker around the time of the murder, and his mother told him that he should not confess to something he didn't do. Kelly Richardson came to the Cahokia Police Department the next morning to talk with Jarrett in person. Their conversation was video recorded. Kelly Richardson warned Jarrett that he needed to tell the truth and asked him what the truth was. When he wouldn't answer her questions, she pressed him and asked what he was "hiding for," prompting Richardson to tell her that "Mone [Parker] did it." Kelly Richardson asked Jarrett why he hadn't told the investigators, and Jarrett responded "because Mone is my friend." Mrs. Richardson encouraged her son to tell the truth and to tell the police that Parker shot Brown. The parties argue that different parts of their conversation are significant.

The Government focuses on Richardson's mother saying, "if Mone did it, then that's what you need to say." (Doc. 57, p. 4.). Parker highlights the fact that Richardson's mother warned him that "Mone is going to rat you out." (Doc. 54, p. 6).

Ultimately, after speaking to his mother, Richardson confessed that he and Parker were driving past Brown when Parker opened the passenger door and began to climb out, causing Richardson to stop the car. According to Richardson, Parker then pulled a gun from his pocket and shot at Brown, who later died from a gunshot wound to his chest. (Doc. 57, p. 9). When he told the investigators about the murder, Richardson cried and appeared distressed. Despite his emotional state, Richardson confidently relayed the events that that led to Brown's murder. In the interviews conducted after Richardson spoke with his mother, he consistently provided the same account of the murder.

After Richardson implicated him, Parker was arrested on May 31, 2016, and charged with first-degree murder in St. Clair County, Illinois (state court case number 16-CF-731). Richardson was a key prosecution witness. Before he could testify at trial, however, Richardson was killed, allegedly while committing a home invasion and armed robbery (Docs. 55-1, 55-2). After Richardson's death, the State dropped its murder charges against Parker (Doc. 55-2). The Government, however, is proceeding with its revocation petition, seeking to introduce Richardson's statements as evidence against Parker.

### III. <u>Analysis</u>

Parker argues that Richardson's statements are unreliable hearsay and that admitting them would violate his Fifth and Sixth Amendment rights, as well as Federal Rule of Criminal Procedure 32.1. Specifically, Parker contends that Richardson's

inconsistent statements to the police, his desire for self-preservation, and his criminal history render his testimony unreliable, giving Parker a strong interest in cross-examining Richardson. Parker maintains that the Court should apply the balancing test delineated in *United States. v. Jordan*, and that the test weighs in favor of not admitting the videos of Richardson's interrogation. **742 F.3d 276, 280 (7th Cir. 2014) (Federal Rule of Criminal Procedure 32.1(b)(2)(C) "requires a district court in a revocation hearing explicitly to balance the defendant's constitutional interest in confrontation and cross-examination against the government's stated reasons for denying them.").**

The Government counters that it has good cause for denying Parker's limited right to confrontation because Richardson's testimony bears substantial indicia of reliability. The Government relies on *Egerstaffer v. Israel*, **726 F.2d 1231 (7th Cir. 1984)**, in urging admission of Richardson's testimony, noting that hearsay should be admitted at revocation hearings when the government presents good cause for denying the defendant his limited constitutional right to confrontation and the hearsay bears "substantial guarantees of trustworthiness."

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." **U.S. Const. amend. VI.** In *Crawford v. Washington*, **541 U.S. 36, 68 (2004)**, the Supreme Court held that before admitting testimonial hearsay in a criminal prosecution, the Sixth Amendment demands that the

declarant be unavailable and that the defendant have had a prior opportunity for cross-examination. *See Lisle v. Pierce*, 832 F.3d 778, 781 (7th Cir. 2016), *cert. denied,* 137 S. Ct. 2129 (2017). Testimonial evidence includes "formal statements to government officers, or formalized testimonial materials such as affidavits, depositions, and the like, that are destined to be used in judicial proceedings." *United States v. Brown,* 822 F.3d 966, 974 (7th Cir.), *cert. denied,* 137 S. Ct. 248 (2016). The Sixth Amendment's robust right to cross examination does not apply, however, to revocation proceedings.[1] **United States v. Kelley, 446 F.3d 688, 690-92 (7th Cir. 2006) (*Crawford v. Washington* does not apply in supervised release revocation hearings). *See also United States v. Boultinghouse*, 784 F.3d 1163, 1171–72 (7th Cir. 2015) (revocation hearings modify already-imposed sentences and implicate only a conditional liberty interest because they are not a stage of a criminal prosecution).**

"Nonetheless, because a revocation proceeding does implicate a defendant's liberty interest, the Fifth Amendment's due process clause accords the defendant certain basic procedural protections in a revocation hearing." *Boultinghouse,* **784 F.3d at 1171.** Federal Rule of Criminal Procedure 32.1 "was largely meant to codify the procedural rights" that the Fifth Amendment grants defendants in supervised release revocation hearings. *Id.* According to Rule 32.1(b)(2)(C), Parker "is entitled to 'an opportunity to

---

[1] Parker concedes that he raised the Sixth Amendment/*Crawford* claim to preserve the issue on appeal in case there is a future extension of the Sixth Amendment. (Doc. 54, p. 11).

appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear.'" *Jordan*, **742 F.3d at 279.** The "interest of justice" requires that, "[t]he court . . . balance the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it." **FED. R. CRIM. P. 32.1(b)(2)(C) (advisory comm. note to 2002 amendment).** The Seventh Circuit has held: "Rule 32.1(b)(2)(C) requires a district court in a revocation hearing explicitly to balance the defendant's constitutional interest in confrontation and cross-examination against the government's stated reasons for denying them." *Jordan*, **742 F.3d at 280.**

When conducting the balancing test, the court considers several factors, including the availability of the witness, the availability of inexpensive ways to remotely present the witness for cross-examination, the reliability of the evidence, and the availability of corroborating evidence or witnesses. *Jordan*, **742 F.3d at 279-80.** Here, the Government cannot produce Richardson for cross examination. The Government has presented good cause for not producing him, and the first two factors weigh in its favor. As a result, the admissibility of Richardson's statements hinges on whether the statements are reliable and whether they can be corroborated by other evidence.

"Hearsay is reliable if it 'bears substantial guarantees of trustworthiness.'" *United States v. Mosley*, **759 F.3d 664, 667 (7th Cir. 2014) (internal citations omitted).**

Page | 8

The record must be "sufficiently clear . . . that the . . . hearsay was substantially trustworthy so as to establish good cause for not producing [the declarants] as live witnesses.'" *Id.* Yet, while reliability is important, it "cannot be the beginning and end of the 'interest of justice' analysis under Rule 32.1(b)(2)(C)." *Jordan*, **742 F.3d at 280.**

In challenging Richardson's reliability, Parker highlights that Richardson gave inconsistent statements to the police and that he did not implicate Parker until his fifth interview. Parker argues that Richardson's interest in self-preservation and his extensive criminal history undermine the reliability of his statements. (Doc. 54, pp. 7-11). Despite these concerns, the Government argues that Richardson's confession was "reasonably detailed" and corroborated, at least in part, by Wal-Mart surveillance tapes and the statements of Kelvin Ray.[2] (Doc. 57, pp. 7-8). The evidence corroborates that Richardson was driving, and Parker was his passenger. Surveillance footage from the crime scene shows Richardson's girlfriend's car pass near Brown moments before he is seen collapsing, presumably from the gunshot wound to the chest that killed him. Richardson's account of the murder was detailed and consistent once he admitted that he was driving as Parker opened the passenger door, got out, and shot at Brown. The various surveillance tapes, Ray's statement, and Richardson's detailed account of Brown's murder separate his statements from hearsay statements that are completely devoid of corroboration and reliability.

---

[2] The Court was not provided with Ray's statement, but the Government alleges that Parker and Richardson were at Ray's house shortly before Brown's murder.

Based on the Court's review of Richardson's videotaped statements, the undersigned finds that the statements bear substantial indicia of reliability. It appears that over the course of the interrogation Richardson moved from providing an account inconsistent with the other evidence in the case, an account that he could not relay to investigators without contradicting himself, to providing a confession that he could relay consistently. It is not insignificant that Richardson's confession placed him at the scene of a murder. The Court finds that the interest of justice does not require the Government to produce Richardson in order to introduce his hearsay statements.

Having found that Richardson's statements are admissible, the Court notes that the burden remains on the Government to establish that Parker is responsible for Brown's murder by a preponderance of the evidence, which Richardson's statements alone may not be sufficient to do. Parker remains free to raise concerns about the sufficiency and accuracy of Richardson's account. Parker can raise issues with Richardson's earlier inconsistent statements, his incentive to implicate Parker for self-preservation, and his criminal history, as they may impact the sufficiency of the evidence against him. Although the Court will allow the admission of the statements into evidence, the extent to which they are determinative of the outcome of the supervised release revocation proceeding has not been decided.

**IV.     Conclusion**

For the above stated reasons, the Court **OVERRULES** Parker's Objection to Hearsay Evidence (Doc. 54) and will admit the videotaped statements given by Richardson into evidence at Parker's final revocation hearing.  This cause remains set for a final revocation hearing on Thursday, September 14, 2017, at 2:30 p.m.

IT IS SO ORDERED.

DATED: September 5, 2017

*s/ Michael J. Reagan*
Michael J. Reagan
United States District Judge